CONTINENTAL SECURITIES CO. v. NEW YORK CENT. & H. R. R. CO. et al.

(Supreme Court, Special Term, Westchester County. December 28, 1914.)

1. RAILROADS (§ 142*)—RAILROAD CORPORATIONS—CONSOLIDATION—INCREASED INTEREST ON BONDS.

An agreement to issue 4 per cent. bonds of the consolidated railroad company in exchange for an equal amount of 3½ per cent. bonds of one of the constituent companies in order to secure the consent of the bondholders to the consolidation is a capitalization of the consents to such consolidation, contrary to Railroad Law (Laws 1910, c. 481) § 141, providing that no bonds or other evidences of debt shall be issued as a consideration for such consolidation, and to Public Service Commissions Law (Laws 1910, c. 480) § 55, providing that no contract for consolidation

*For other cases see same topic & § NUMBER in Dec. & Am. Digs..1907 to date, & Rep'r Indexes

shall be capitalized, nor shall any corporation issue any bonds against or as a lien upon any contract for consolidation.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 444–447; Dec. Dig. § 142.*]

2. RAILROADS (§ 142*)—RAILROAD CORPORATIONS—CONSOLIDATION—INCREASED INTEREST ON BONDS.

The fact that the consolidation will be of advantage to the public, and that the saving thereby effected will more than offset the increased interest, does not affect the illegality of the agreement.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 444–447; Dec. Dig. § 142.*]

Action by the Continental Securities Company against the New York Central & Hudson River Railroad Company and others.   Motion of plaintiff for injunction pendente lite granted on conditions.

J. Aspinwall Hodge, of New York City, for plaintiff.

Alexander S. Lyman, of New York City, for defendant New York Cent. & H. R. R. Co.

Alexander & Green, of New York City, for defendant Equitable Life Ins. Co.

White & Case, of New York City, for defendant Bankers' Trust Co

TOMPKINS, J.   The consents of the proper authorities of the several states, through which the lines of the railroads that are to be consolidated run, to the consolidation agreement, have been obtained, together with the necessary consents of the holders of the 3½ per cent. bonds of the defendant railroad, called "Lake Shore Collaterals."

In order to obtain these latter consents, it was necessary for the defendants to agree with said bondholders that, upon such consolidation being effected, they would issue to said bondholders new bonds, bearing 4 per cent. interest, in exchange for the 3½ per cent. Lake Shore collaterals, then held by them, and such an agreement was made by the defendants with the said Lake Shore bondholders, in consideration of which three-fourths or more of said bondholders gave their consents to the proposed consolidation, which consents they had previously refused to give, and only did give when they were promised an increase of one-half of 1 per cent. interest on the bonds to be given them by the New York Central Company, which is to be the name of the new or consolidated company.

[1] This action is brought by the plaintiff, a stockholder of the New York Central & Hudson River Railroad Company, one of the consolidating companies, to enjoin the carrying out of the consolidation agreement, and the refunding of the said 3½ per cent. bonds by an issue, by the defendant and the consolidated or new company of the proposed 4 per cent. bonds, upon the ground that the proposed issue of 4 per cent. bonds, in exchange for the 3½ per cent. Lake Shore collaterals, will be in effect a capitalization of the consents given by the said Lake Shore bondholders to the proposed consolidation, and be in violation of section 141 of the Railroad Law and section 55 of the Public Service Commissions Law of this state.

Section 141 of the Railroad Law reads as follows:

"Nor shall any bonds or other evidences of debt be issued as a consideration for, or in connection with, such consolidation."

Section 55 of the Public Service Commissions Law provides:

"Nor shall any contract for consolidation or lease be capitalized in the stock of any corporation whatever; nor shall any corporation hereafter issue any bonds against or as a lien upon any contract for consolidation or merger."

There is a statute in the state of Ohio, through which some of the consolidating lines run, which provides:

"Nor shall the aggregate amount of the debt of such consolidated companies by reason of such consolidation, be increased."

Since this motion for an injunction pendente lite was argued a week ago, the proposed consolidation has been agreed to by a large majority of the stockholders of the several companies, and the consolidation of said companies has been consummated, except as to some minor details, which are yet to be arranged, and the issuing and exchange of the proposed 4 per cent. bonds of the new company for the 3½ per cent. bonds now held by the consenting bondholders of the Lake Shore Company.

The additional one-half per cent. interest on these bonds will aggregate something like $339,000 a year, to be paid by the new (consolidated) company, as a bonus or gratuity to the Lake Shore bondholders, in exchange for their consents to the consolidation agreement. The effect of this plan, in my opinion, if carried out, will be to capitalize the said consents of the Lake Shore bondholders, and to increase the corporate indebtedness of the consolidating companies.

The purpose of the statute was undoubtedly to prevent an increase in the aggregate of the debts of the consolidating corporations, by reason of the giving of the consents of such corporations or any of them; and it seems to me that the proposed new issue of bonds will result in a very substantial increase in the debt and obligation of the combined and consolidated companies, without any return therefor, save the said consents to the consolidation plan.

The authorities cited by the defendants, which hold that the constitutional limitation upon the debts, of municipalities, applies only to the principal of the debt and does not include future interest, do not seem to apply to this question. Of course, if the unaccrued interest on long-term municipal securities were all to be added to the principal of such securities, and considered a part of the debt, limited by the statute, such debt limit might be reached or passed by a single issue of bonds. It is perfectly clear that the debt limit upon municipal securities applies only to principal and accrued interest, perhaps, but not to unearned interest.

But in this case the question is whether the aggregate of the debts and obligations of the consolidating companies is increased for no other consideration than the giving of the consents necessary to accomplish consolidation, and I cannot avoid the conclusion that an added burden of between $300,000 and $400,000 each year for a period of nearly 85

years, by way of fixed interest charges, materially increases the debt of the consolidated companies, and in effect is an issue of bonds as a consideration for the consents necessary to bring about the consolidation, and therefore violative of section 141 of the Railroad Law, and is in effect a capitalization of the consents for such consolidation, in violation of section 55 of the Public Service Commissions Law.

[2] Undoubtedly the consolidation of these companies will be a good thing for the public, as well as for the bondholders and stockholders of the railroad companies interested, and may, when consummated, result in savings largely in excess of the additional rate of interest proposed to be paid to the Lake Shore bondholders; but I do not see how ·that affects the present question before the court, which is simply whether the proposed refunding of the 3½ per cent. bonds by an issue of 4 per cent. bonds by the consolidated companies is lawful.  The question is a very important one, and involves large public and private interests, and is serious enough to justify an injunction against the issuing of the proposed 4 per cent. bonds, until this action can be determined upon the merits, at a trial term, provided it be brought on promptly, and provided also the plaintiff give suitable security to protect those interested from loss, in the event that it be finally determined that this action cannot be maintained, or that the plaintiff is not entitled to the injunctive relief asked for.

This action may not be in good faith, and even a bad motive may have prompted the plaintiff, and for that reason it may not be entitled to equitable relief, or the principle of equitable estoppel may apply, as claimed in defendants' brief, but these things do not sufficiently appear from the papers before me on this motion, and are matters that must be determined at the trial.

My conclusion is that the plaintiff's motion should be granted, upon condition that it stipulate to try the case upon the merits during the first week of the January, 1915, Special Term for trials to be held at White Plains, if the defendants elect to have the case disposed of at that time; and that the plaintiff give an undertaking, the amount and conditions of which will be fixed by the order to be entered hereon, which shall be settled before me at the courthouse in the city of Newburgh, N. Y., on Tuesday, December 29, 1914, at 11 o'clock in the forenoon.